# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JEFFREY HUGHES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 10-1378-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security
(hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental
security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social
Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).
Finding error in the Commissioner's failure to discuss, or even mention, Plaintiff's
headaches, the court REVERSES the decision and ORDERS that judgment shall be
entered REMANDING the case pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I.      Background

Plaintiff applied for both DIB and SSI on July 19, 2006, alleging disability
beginning January 1, 1999.  (R. 12, 140-50).  The applications were denied upon initial

consideration, and Plaintiff did not seek reconsideration.  (R. 12, 59-66).  Plaintiff again

filed applications on February 9, 2007 alleging disability beginning January 1, 2000.  (R.

12, 151-58).  The applications were denied initially and upon reconsideration, and

Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 12, 55-58,

82).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing

before ALJ George M. Bock on March 10, 2010.  (R. 12, 30).  At the hearing, testimony

was taken from Plaintiff and from a vocational expert.  (R. 12-13, 31-52).

On March 31, 2010 ALJ Bock issued his decision finding Plaintiff's date last

insured for DIB was March 31, 2005 and that Plaintiff was not disabled within the

meaning of the Act at any time after January 1, 2000 through the date of the decision.  (R.

12-23).  Specifically, the ALJ found that Plaintiff's knee osteoarthritis is not a severe

impairment, but that Plaintiff has other severe impairments including degenerative disc

disease of the lumbar and cervical spine with mild radiculopathy of the cervical spine, and

mild carpal tunnel syndrome.  (R. 16 & n.3).  He found that Plaintiff's condition does not

meet or medically equal an impairment in the Listing of Impairments.  Id.  The ALJ

considered and summarized the record evidence including Plaintiff's allegations, the

medical records, and the medical opinions.  (R. 16-20).  He found Plaintiff's allegations

of symptoms not credible (R. 18); and accorded "some weight" to the opinion of the state

agency "single decision maker" who assessed residual functional capacity ( RFC) at the

initial evaluation, accorded "great weight" to the medical opinion of the state agency

consultant who assessed Plaintiff's RFC upon reconsideration, and accorded "little weight" to the opinions of Plaintiff's treating physician, Dr. Appl.  (R. 19).  Based upon his evaluation of the evidence, the ALJ assessed Plaintiff with the RFC for a range of light work limited by an inability to crawl, or to climb ropes, ladders, or scaffolds.  (R. 16-17).  He found that Plaintiff may perform other postural movements only occasionally, cannot power twist repetitively with the right wrist or hand, and cannot use his right hand more than frequently.  (R. 17).

The ALJ determined that Plaintiff is unable to perform any of his past relevant work, and that transferability of job skills acquired in Plaintiff's past work is not material to the determination of disability.  (R. 20-21).  Considering Plaintiff's age, education, work experience, and the RFC assessed, the ALJ concluded that there are a significant number of jobs in the economy that Plaintiff can perform, and that Plaintiff is not disabled within the meaning of the Act.  (R. 21-22).  Therefore, he denied Plaintiff's applications. (R. 22).  Plaintiff sought Appeals Council review of the decision, but his request was denied, and the ALJ's decision is the final decision of the Commissioner.  (R. 1-8);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  He now seeks judicial review.  (Doc. 1).

## II.   Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g));  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same);  Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial

gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R.

§§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs existing in the economy which are within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes three claims of error in the ALJ's decision.  He claims (1) that the ALJ did not show that jobs Plaintiff can perform exist in significant numbers in the economy; (2) that the ALJ improperly weighed the treating source opinion of Dr. Appl and the nonexamining source opinion of the state agency medical consultant; and (3) that the ALJ erred in assessing RFC because he did not consider all of Plaintiff's impairments. The Commissioner argues that the ALJ properly weighed the medical opinions of Dr. Appl and of the State agency consultant; that the ALJ properly considered Plaintiff's impairments in  assessing RFC , and that the ALJ properly found a significant number of jobs in the economy that Plaintiff can perform.

The court finds that remand is necessary for the ALJ to consider and discuss Plaintiff's headaches.  Therefore, on remand it will be necessary for the Commissioner to re-evaluate the medical opinions, re-assess Plaintiff's RFC, and reconsider whether there are a significant number of jobs in the economy that Plaintiff can perform.  Consequently, the court will not discuss Plaintiff's remaining arguments in this case.

## III.    The ALJ Erred in Failing to Consider all of Plaintiff's Impairments

Plaintiff acknowledges that if an ALJ finds at step two that Plaintiff has an impairment or combination of impairments that is severe within the meaning of the Act, a failure to assess another impairment as severe is not reversible error.  (Pl. Br. 22) (citing Brescia v. Astrue, 287 Fed. Appx. 626, 628-29 (10th Cir. 2008)).  He argues, however, that an ALJ must consider the combined effect of all of Plaintiff's impairments, but that the ALJ failed to do so in this case because he stated that he would discuss Plaintiff's knee osteoarthritis later in the decision and did not do so, and because he simply failed to discuss Plaintiff's headache pains.  (Pl. Br. 22-23).  The Commissioner argues that the ALJ did not consider these impairments severe, that the ALJ indicated that he had considered all of the evidence and all of Plaintiff's symptoms, that the ALJ discussed Plaintiff's knee complaints, that he is not required to discuss every piece of evidence, and that he adequately discussed Plaintiff's alleged impairments.  (Comm'r Br. 11-12).

Plaintiff is correct to acknowledge that where the Commissioner has found an impairment or combination of impairments is severe, a failure to identify another

7

impairment as severe is not reversible error.  In <u>Brescia</u>, 287 Fed. Appx. at 628-629, the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. <u>Id.</u>  As Plaintiff argues, the <u>Brescia</u> court recognized that an ALJ must consider the combined effect of all impairments in later steps of the sequential evaluation process.  <u>Id.</u>; <u>see also</u> 20 C.F.R. §§ 404.1523, 416.923 (noting that where a claimant has multiple impairments, the combined effect will be considered).  Shortly after the <u>Brescia</u> opinion the court reiterated that the failure to find additional impairments are severe is not in itself cause for reversal <u>so long as</u> the ALJ, in determining plaintiff's RFC, considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"  <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008) (citing SSR 96-8p, 1996 WL 374184, at *5) (emphasis in <u>Hill</u>).

Therefore, the question before the court here is whether the ALJ considered the combined effect of all of Plaintiff's impairments in making his RFC assessment.  The Commissioner argues that the ALJ properly found Plaintiff's knee impairment and his headaches were not severe.  He cites to the record extensively, points out that the ALJ

discussed Plaintiff's knee complaints as he indicated he would, and argues that the ALJ adequately discussed these impairments.

In his step two finding, the ALJ noted, "As will be further discussed below, the claimant's knee osteoarthritis is not a severe impairment."  (R. 16, n.3).  Contrary to Plaintiff's assertion, and as the Commissioner points out, the ALJ did, in fact, discuss Plaintiff's knee osteoarthritis later in the decision.  (R. 18).  He summarized the medical evidence regarding the "knee complaints," noted that Plaintiff was given physical therapy and was taught home exercises, and concluded by observing that in the more recent evaluations there were "no clinical lower extremity abnormalities," and "no significant problems in the right knee beyond chondromalacia of the patella."  (R. 18).  Plaintiff has not explained how this discussion is inadequate, and the court finds no inadequacy.

With regard to consideration of Plaintiff's headaches, the court finds no indication in the decision that the ALJ was even aware that Plaintiff was alleging limitations resulting from headaches.  The court's review of the medical records reveals at least eleven instances in which Plaintiff reported headaches to medical personnel.  (R. 346, 382, 387, 392, 394, 397, 495, 536-37, 544-46, 585, 613).  The Commissioner points to at least one instance where Plaintiff denied headaches to medical personnel.  (R. 478). From this record, it is somewhat equivocal whether Plaintiff experiences headaches that restrict his ability to work.  However, the ALJ said nothing in the decision regarding these alleged headaches.  Moreover, as previously discussed, it is not the court's prerogative to

9

reweigh the evidence or to decide in the first instance what limitations result from Plaintiff's impairments.  That is the Commissioner's responsibility.

Nevertheless, on this evidence alone, the court would be hesitant to remand for further proceedings because a claimant may not merely seek remand based upon obscure or relatively innocuous record evidence suggesting additional limitations which he did not bring to the ALJ's attention.  However, the court's review of the hearing transcript reveals that Plaintiff testified to having headaches resulting from exertion, tension, or mental stress every week (or every two weeks if he is lucky).  (R. 42).  Plaintiff testified that his headache medication "is explicitly helpful," but that "[w]hen I take that I have to pretty much shut out light, sound and get fetal and those are things advised by my doctor and they seem definitely helpful for letting the medication do its job."  (R. 42).  Later, in questioning the vocational expert, Plaintiff's counsel asked, "And then if because of problems with sleeping and problems with headaches the person would end up missing approximately one day [of work] per week, and that would be on a consistent basis, would they be able to maintain employment?"  (R. 51).  The expert responded that such a person could not maintain employment.  Id.

The equivocal record evidence, Plaintiff's testimony, and Plaintiff's argument at the hearing when considered together suggest that, at least potentially, Plaintiff may miss as much as one day of work each week due to headaches.  Yet, the ALJ did not even discuss headaches in his decision.  Although the Commissioner suggests that the ALJ

need not have discussed this evidence, the court does not agree.  On its face, the evidence is significantly probative and if the ALJ rejects it, he must discuss it.  <u>Grogan</u>, 399 F.3d at 1266 (ALJ must discuss significantly probative evidence he rejects); <u>Clifton v. Chater</u>, 79 F.3d 1007, 1010 (10th Cir. 1996) (same).  While there may be an evidentiary basis to find Plaintiff's headaches not so debilitating as alleged, that is for the Commissioner to find, not for the court.  Remand is necessary for the Commissioner to consider and discuss Plaintiff's headaches.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case.

Dated this 29th  day of November 2011, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**

11